# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Conservatorship of MELVIN BERG.

---

DANIEL BERG,

       Appellant,

v

MELISSA DYKMAN, HOLLY HAACK, DIANE
TIBBS, REBECCA BERG, NORBERTO
MUNOZ, and CATHERINE BERG,

       Appellees.

UNPUBLISHED
May 17, 2016

No. 326000
Newaygo Probate Court
LC No. 12-005131-CA

---

*In re* MELVIN BERG TRUST.

---

DANIEL BERG,

       Appellant,

v

MELISSA DYKMAN, HOLLY HAACK, DIANE
TIBBS, REBECCA BERG, NORBERTO
MUNOZ, and CATHERINE BERG,

       Appellees.

No. 326001
Newaygo Probate Court
LC No. 12-005151-TV

---

*In re* MELVIN BERG FARM TRUST.

---

DANIEL BERG,

       Appellant,

v

No. 326002

-1-

MELISSA DYKMAN, HOLLY HAACK, DIANE
TIBBS, REBECCA BERG, NORBERTO
MUNOZ, and CATHERINE BERG,

        Appellees.

Newaygo Probate Court
LC No.   12-005152-TV

_In re_ Conservatorship of MELVIN BERG.

DANIEL BERG,

        Appellant,

v

MELISSA DYKMAN, HOLLY HAACK, DIANE
TIBBS, REBECCA BERG, NORBERTO
MUNOZ, and CATHERINE BERG,

        Appellees.

No.   326111
Newaygo Probate Court
LC No.   12-005131-CA

_In re_ MELVIN BERG TRUST.

DANIEL BERG,

        Appellant,

v

MELISSA DYKMAN, HOLLY HAACK, DIANE
TIBBS, REBECCA BERG, NORBERTO
MUNOZ, and CATHERINE BERG,

        Appellees.

No.   326112
Newaygo Probate Court
LC No.   12-005151-TV

_In re_ MELVIN BERG FARM TRUST.

DANIEL BERG,

        Appellant,

v                                                          No.  326113
                                                           Newago Probate Court
MELISSA DYKMAN, HOLLY HAACK, DIANE                         LC No.  12-005152-TV
TIBBS, REBECCA BERG, NORBERTO
MUNOZ, and CATHERINE BERG,

                Appellees.

Before:  O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

        In these consolidated appeals, appellant challenges as of right an order granting appellees summary disposition.  Finding no errors warranting reversal, we affirm.

## I.  BASIC FACTS

        The facts and disputes in this case are voluminous, but largely irrelevant to the issue before us on appeal.  We provide a cursory overview of the relevant facts.

        Melvin Berg (Melvin) and his wife Elsie Berg (Elsie) had five children – Daniel Berg (Daniel), Catherine Berg (Catherine), Diane Berg Tibbs (Diane), Holly Berg Haack (Holly), and Rebecca Berg (Rebecca).  Melvin and Elsie owned approximately 300 acres of land, which Melvin farmed.  In 1992, Melvin and Elsie each created a revocable trust for the benefit of their children (1992 Trust).  The 1992 Trust also included the Berg Farm Trust (Farm Trust).  The Farm Trust would go into effect upon Melvin's death or disability (such disability to be certified by two physicians) and provided that Daniel would have day-to-day responsibility for operating the farm for which he would be compensated and reimbursed.

        Elsie died some years ago.  On March 26, 2012, Melvin, who was then 91 years old, petitioned the probate court to appoint a conservator to help preserve his assets.  Just prior to Melvin filing this petition, the family had divided into two separate factions, with Daniel, Diane and Holly on one side and Rebecca and Catherine on the other.  Melvin was convinced that Daniel was trying to usurp control of the farm.  On the eve of the hearing in which the probate court appointed Melissa Dykman (Dykman) as temporary conservator, Melvin executed an amended trust (Amended Trust).  While the Amended Trust did not disinherit any of Melvin's children, it drastically changed the distribution to the benefit of Rebecca and Catherine and to the detriment of Daniel, Diane and Holly.  Importantly, the Amended Trust did away with the Farm Trust.  Daniel, Diane and Holly accused Rebecca and Catherine of undue influence.  The parties battled over whether Melvin had the capacity to create the Amended Trust and whether the Farm Trust had already taken effect prior to the amendment due to Melvin's "disability."  Numerous actions were brought.  The probate court appointed Dykman as Melvin's conservator, guardian, trustee, and attorney.  At one point, the probate court ordered that all real property could be sold and Daniel purchased the farm.

-3-

On August 18, 2014, the parties entered into an agreement (Settlement Agreement), which disposed of a number of issues. The agreement provided, in part:

7. In Case No.s [sic] 12-5151-TV and 12-5152-TV, and to the extent applicable to Case No.s [sic] 12-5131-CA and 12-5182-GA, all property, real or personal (except as to those items of personal property which are ultimately determined by agreement or further court order to be the sole property of Daniel Berg, Diane Tibbs or Holly Haack), wherever located, held, owned or possessed by Melvin Berg, either individually; or, by or through any individual trust held by him, including The First Amendment To And Restatement Of The Melvin F. Berg Living Trust, dated April 16, 2012; or, previously held by him individually or jointly with any other person; or, by or through The Melvin F. Berg and Elsie Jane Berg Living Trust, dated November 12, 1992, whether in said trust, or which was or should have been allocated to, or held in, a separate trust designated as The Melvin Berg Trust or The Elsie Berg Trust under the terms of The Melvin F. Berg and Elsie Jane Berg Living Trust, dated November 12, 1992; or, by Elsie Berg individually or her probate estate; or, jointly or as tenants by entireties by Melvin Berg and Elsie Berg, whether presently or in the past . . . and, any annuity, life insurance policy, tax-deferred plan, bank account, certificate of deposit, and any other like financial instrument, policy or account, or payable on death account, regardless of the designated beneficiary or beneficiaries named on same, shall be treated for purposes of this Settlement Agreement as one joint pot of property to which the terms of this Settlement Agreement shall apply no matter how held at any time prior to or after the death of Melvin Berg (hereinafter "The Joint Pot of Property"). Except as noted above, in the event of such beneficiary designated accounts, policies or instruments the proceeds therefrom shall be forthwith turned over to and paid into The Joint Pot of Property.

8. Melvin Berg shall be, is and will be entitled to utilize The Joint Pot of Property during his lifetime for whatever purposes are needed by him, subject to no limitation whatsoever, including, but not limited to, attorney fees, conservator fees, personal living expenses, medical care, insurance premiums and expenses, day, home or nursing home care, and any and all other expenses, of whatever nature or type, that may be incurred by him - it being the intent of this provision that the assets held by or included in, or to be included in The Joint Pot of Property, shall be fully available to and for the benefit of Melvin F. Berg during his lifetime as determined by him if competent, or by his conservator/guardian if not able to act for himself.

\*\*\*

10. Upon the death of Melvin Berg, fifty percent (50%) of the then remaining assets designated as The Joint Pot of Property, less payment of creditors, taxes, administration expenses, and other like expenses (the "Net Estate"), shall be divided into two equal shares and distributed as follows: One share under the terms and provisions of The Melvin F. Berg and Elsie Jane Berg Living Trust, dated November 12, 1992, and/or the subtrust designated thereunder as The Elsie

-4-

Berg Trust, as if unrevoked at the time of such distribution of the Net Estate, under the terms of which each child of Melvin Berg and Elsie Berg would be, and is agreed to be, entitled to a twenty percent (20%) share, i.e., five (5) equal shares, one to each of the five children, and in the event of the death of any of said children prior to the death of Melvin Berg, then as provided in said trust agreement, and 2) One share under the terms of The First Amendment To And Restatement Of The Melvin F. Berg Living Trust, dated April 16, 2012, as if uncontested, valid, properly executed and in full force and effect as of the date of death of Melvin Berg, under the terms of which each of the 5 children of Melvin Berg and Elsie Berg would be, and is agreed to be, entitled to a separate share as follows: Rebecca Berg, thirty-five percent (35%); Catherine Berg, thirty-five percent (35%), Daniel Berg, ten percent (10%); Diane Tibbs, ten percent (10%); and, Holly Haack, ten percent (10% ), but in the event of the prior death of any said named beneficiary, then as provided in the said amended and restated trust agreement; the parties hereto further agreeing that none shall raise or further contest the provisions of said amended and restated trust for any purpose or in any event, hereby giving up, waiving, relinquishing any such right to do so, and agreeing hereby to be forever barred from doing so.

Daniel claimed that the Settlement Agreement did not preclude him from seeking compensation and reimbursement for the years he helped Melvin run the farm from 2009 until 2012. Melvin, Catherine and Rebecca each separately moved for summary disposition, arguing that Daniel never actually pled a claim for compensation and reimbursement and, as such, summary disposition was appropriate pursuant to MCR 2.116(C)(8). They noted that Daniel's only "claim" for reimbursement was in a prayer for relief in his January 17, 2014 Amended Petition, which was contingent upon the probate court finding that the Amended Trust was valid. They pointed out that, in light of the parties' Settlement Agreement, the probate court was never going to make a determination regarding the validity of the trusts. Alternatively, Melvin, Catherine and Rebecca argued that summary disposition was appropriate pursuant to MCR 2.116(C)(10) because the Farm Trust never became operational. They argued that Daniel's services were gratuitous and that Daniel's claim and delivery case against Melvin and his tortious interference case against Catherine and Rebecca collaterally estopped Daniel from asserting that he had a contract with Melvin to take over farming operations.

Daniel responded that he had properly pled his claim in his Amended Petition and any deficiency could be forgiven because the parties had adequate notice of Daniel's claims. Daniel also argued that the parties' Settlement Agreement preserved Daniel's claim without reference to the validity of the various trusts. In any event, Daniel argued that the 2012 Amended Trust was invalid and the 1992 Trust – and therefore the Farm Trust – was in effect. Daniel argued that, at a minimum, there was a question of fact as to whether Daniel's efforts were gratuitous. Finally Daniel argued that collateral estoppel did not preclude his claim because the causes of action and parties involved were separate and distinct.

In addition to his responses to the motions for summary disposition, Daniel moved to amend his pleadings to formally include a claim for reimbursement. Daniel's proposed amended petition included allegations of implied-in-fact contract, quantum meruit, unjust enrichment, and detrimental reliance.

A hearing on the motions for summary disposition and the motion to amend the pleadings was held on January 6, 2015. On January 28, 2015, the probate court denied Daniel's motion to amend and granted the motions for summary disposition. Daniel now appeals as of right.

## II. MOTION TO AMEND

Daniel argues that he had, in fact, pled a claim of reimbursement and that, if he failed to properly plead a claim, the probate court abused its discretion when it denied Daniel's motion to amend.

"Decisions concerning the meaning and scope of pleading, and decisions granting or denying motions to amend pleadings, are within the sound discretion of the trial court and reversal is only appropriate when the trial court abuses that discretion." *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). "The determination that a trial court abused its discretion involves far more than a difference in judicial opinion. Rather, an abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *In re Kostin*, 278 Mich App 47, 51; 748 NW2d 583 (2008) (internal citation omitted). "This Court will not reverse a trial court's decision regarding leave to amend unless it . . .resulted in injustice." *PT Today, Inc v Commr of Office of Fin & Ins Services*, 270 Mich App 110, 142; 715 NW2d 398 (2006).

Daniel's argument is two-fold. Daniel first claims that the probate court abused its discretion when it determined that he failed to sufficiently plead a claim for reimbursement. Daniel then argues that the trial court abused its discretion when, after concluding that a claim for reimbursement had not been pled, the probate court refused to allow Daniel to amend his pleadings.

## A. WHETHER DANIEL SUFFICIENTLY PLED A CLAIM FOR REIMBURSEMENT

MCR 2.111 provides, in relevant part:

(A) Pleading to Be Concise and Direct; Inconsistent Claims.

(1) Each allegation of a pleading must be clear, concise, and direct.

(2) Inconsistent claims or defenses are not objectionable. A party may

> (a) allege two or more statements of fact in the alternative when in doubt about which of the statements is true;

> (b) state as many separate claims or defenses as the party has, regardless of consistency and whether they are based on legal or equitable grounds or on both.

***

(B) Statement of Claim. A complaint, counterclaim, cross-claim, or third-party complaint must contain the following:

-6-

(1) A statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend; and

(2) A demand for judgment for the relief that the pleader seeks. If the pleader seeks an award of money, a specific amount must be stated if the claim is for a sum certain or a sum that can by computation be made certain, or if the amount sought is $25,000 or less. Otherwise, a specific amount may not be stated, and the pleading must include allegations that show that the claim is within the jurisdiction of the court. Declaratory relief may be claimed in cases of actual controversy. See MCR 2.605. Relief in the alternative or relief of several different types may be demanded.

Citing the court rule, our Supreme Court has explained:

A complaint must provide reasonable notice to opposing parties. This rule is designed to avoid two opposite, but equivalent, evils. At one extreme lies the straightjacket of ancient forms of action. Courts would summarily dismiss suits when plaintiffs could not fit the facts into these abstract conceptual packages. At the other extreme lies ambiguous and uninformative pleading. Leaving a defendant to guess upon what grounds plaintiff believes recovery is justified violates basic notions of fair play and substantial justice. Extreme formalism and extreme ambiguity interfere equivalently with the ability of the judicial system to resolve a dispute on the merits. The former leads to dismissal of potentially meritorious claims while the latter undermines a defendant's opportunity to present a defense. Neither is acceptable. [*Dacon v Transue*, 441 Mich 315, 329; 490 NW2d 369 (1992) (internal citation and footnoted omitted).]

In his January 17, 2014 Amended Petition for Enforcement of Trust and Determination of Trust, Daniel asked the probate court to disregard Melvin's Amended Trust, claiming that Melvin did not have the capacity to amend the 1992 Trust and that he was operating under the undue influence of Rebecca and Catherine. Daniel requested that the probate court find the Farm Trust operable. As to reimbursement, the petition stated:

33. That in the event the court determines the Amended Trust is valid a judicial determination should be made regarding the compensation and reimbursement of expenses due Daniel Berg from November 12, 1992 to April 16, 2012 under the terms as set forth in the 1992 Berg Farm Trust.

34. WHEREFORE Petitioners pray this honorable Court will order that Daniel Berg shall have day to day responsibility for operating the farm until the trust terminates as provided below. DANIEL BERG may reside on the farming premises, shall receive reasonable compensation for services provided in an amount to be determined by the Trustee, and shall be responsible for the maintenance of the farm property, equipment and livestock and general management of the farming business. Alternately [sic], that this Court make a

determination as to what farm implements, livestock, cattle, crops and tangible personal property belong in the Elsie Jane Berg Trust. In the event the court determines the Amended Trust is valid a judicial determination should be made regarding the compensation and reimbursement of expenses due Daniel Berg from November 12, 1992 to April 16, 2012 under the terms as set forth in the 1992 Berg Farm Trust.

At the hearing on Daniel's motion to amend the pleadings, the probate court found such an allegation to lack the formal requirements of a pleading:

> I don't believe that there's surprise here, but I don't believe surprise is of any relevance, it's not necessary. I think these three lawyers here on my left knew that this issue was out there, but that's not sufficient and I would cite [MCR 2.111(A)] in support of that, it says: "Each allegation of a pleading must be clear, concise, and direct." There's no way that the allegation in a ["]wherefore["] clause is clear, concise, and direct.

> I think if that's not good enough then I look at subparagraph (B) under the same pleading – or same Court Rule I should say, that's entitled, Statement of Claim. "A complaint, counterclaim, cross-claim, or third-party complaint must contain the following . . .", at subparagraph one there under, "A statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend."

> Subparagraph two, "A demand for judgment for the relief that the pleader seeks. If the pleader seeks an award of money, a specific amount must be stated if the claim is for a sum certain or a sum that can by computation be made certain, or if the amount sought is $25,000 or less. Otherwise, a specific amount may not be stated, and the pleading must include allegations that show that the claim is within the jurisdiction of the court. Declaratory relief may be claimed in cases of actual controversy."

> I think there's [a] complete failure here to meet the terms of that court rule. I think that's dispositive of this case.

It cannot be said that the trial court abused its discretion when it concluded that Daniel's "wherefore" clause did not satisfy the requirements for pleading a cause of action for reimbursement. The statement did not "refer either specifically or generally to any facts." *Dacon*, 441 Mich at 330. The focus of the amended petition was Daniel's contention that the Farm Trust was operational and that Melvin had been unduly influenced by Rebecca and Catherine into amending the 1992 Trust. At no time did Daniel raise allegations of implied-in-fact contract, quantum meruit, unjust enrichment, or detrimental reliance, as alleged in his proposed amended pleading.

Daniel argues that Melvin impliedly consented to litigate the issue of reimbursement based on his attorney's comments to the circuit court in a related proceeding. At a November 13, 2014 hearing on summary disposition in the claim and delivery case, Dykman had argued:

> Your Honor, I think that this case obviously is very complicated in that in order to avoid having any appealable issues we need to remember why we're here today and not get confused with things that have already been litigated or will be litigated in Probate Court.

> This case involves a claim and delivery. That lawsuit was filed by Dan Berg, and that's the lawsuit that we are here for Summary Disposition on. This isn't a case about a breach of contract. This isn't a case about an agreement. I had no obligation to litigate that or bring any proof today regarding any lack of agreement which has always been our position. There is no breach of contract claim that has been pled today.

> I don't think the Court can rule on whether or not Dan is entitled to any contribution or reimbursement for all of these efforts that he put into this farm because this is a claim and delivery action. Those pleadings – Those things have been pled according to the Plaintiff here in the Probate Court case, and to have this Court rule on them and also have the Probate Court rule on them obviously would be unjust and unfair to Melvin Berg.

At the hearing on the motion to amend pleadings, the probate court rejected Daniel's claim that Dykman had impliedly consented to litigate the issue of reimbursement:

> Much has been made about Ms. Dykman saying that something was pled sometime before, and calling it a pleading or it was pled as far as this reimbursement goes. Well I've seen Ms. Dykman represent many a character in this Court, all of these fellows according to her are fine fellows, it turns out not to be so, often, but she's doing her job.

> Lawyers are wordsmiths, probably as careful as anybody; I'd like to think we're more careful about the words we choose. I[t] may not have been the best choice, but I don't see why it is dispositive of the decision in this case; it's not. I think it's up to me to decide whether or not this claim as such was properly plead and for the reasons I've stated I don't think it was.

The trial court did not abuse its discretion when it concluded that Dykman's statement in a related case did not relieve Daniel of his obligation to properly plead a claim for reimbursement.

Daniel next argues that his "Notice of Issues" filed in response to the March 19, 2014 probate court order sufficed to plead reimbursement. Within a restatement of his affirmative defenses, Daniel included the following paragraph:

> 18. Whether Daniel Berg is entitled to compensation and reimbursement of expenses due to his detrimental reliance on Melvin Berg's assertions to him the [sic] Daniel Berg was to take over the operation of the Berg Farm.

-9-

This was insufficient for the probate court, which noted:

> If you're going to make a claim you've gotta make a claim. There should have been at least a count, c-o-u-n-t, somewhere along the lines that specified then and maybe even attached those receipts and said they're available to counsel for something.

The probate court did not abuse its discretion when it concluded that the parties respective "Notice of Issues" did not relieve Daniel of his obligation to properly plead a claim for reimbursement. MCR 2.110(A) provides:

> **Definition of "Pleading".** The term "pleading" includes only:
>
> (1) a complaint,
>
> (2) a cross-claim,
>
> (3) a counterclaim,
>
> (4) a third-party complaint,
>
> (5) an answer to a complaint, cross-claim, counterclaim, or third-party complaint, and
>
> (6) a reply to an answer.
>
> No other form of pleading is allowed.

"As with statutes, when a court rule specifically defines a given term, that definition alone controls." *Ligons v Crittenton Hosp*, 490 Mich 61, 81; 803 NW2d 271 (2011) (internal quotation marks omitted.) The parties' "Notice of Issues" did not meet the definition of pleading and did not invite a responsive pleading. MCR 2.110(B). And, although "Michigan is a notice-pleading state" such that "[a]ll that is required is that the complaint set forth allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend," *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011), Daniel in no way stated with sufficient specificity his claim for reimbursement.

Daniel cites MCR 5.101, which provides:

> (A) Form of Action. There are two forms of action, a "proceeding" and a "civil action."
>
> (B) Commencement of Proceeding. A proceeding is commenced by filing an application or a petition with the court.
>
> (C) Civil Actions, Commencement, Governing Rules. The following actions, must be titled civil actions and commenced by filing a complaint and are *governed by the rules applicable to civil actions in circuit court*:

(1) Any action against another filed by a fiduciary or trustee.

(2) Any action filed by a claimant after notice that the claim has been disallowed. [Emphasis added.]

There is nothing in MCR 5.101 that relieves Daniel of his obligation to set forth an adequate pleading under MCR 2.111. Daniel cites *In re Halbeck*, 201 Mich App 387; 506 NW2d 574 (1993) to explain that a court will forgive pleading deficiencies. However, *Halbeck* is not helpful to Daniel because the litigant in *Halbeck* forgot to include elements of the pleading such as the case number and name of the court. Our Court declared that such omissions "should not be fatal." *Halbeck*, 201 Mich App at 398. However, unlike Daniel, the litigant in *Halbeck* fully set forth a "detailed statement and proof of claim." *Id.* at 399.

The trial court did not abuse its discretion when it concluded that Daniel had not sufficiently pled a claim for reimbursement.

## B.  WHETHER THE PROBATE COURT ABUSED ITS DISCRETION IN DENYING DANIEL'S MOTION TO AMEND

MCR 2.118(A) provides, in relevant part:

(1) A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading.

(2) Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires.

Our Supreme Court has explained:

Our rule, as the federal rule, is designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result. A motion to amend ordinarily should be granted, and denied only for particularized reasons:

In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given.

To safeguard and implement the policy favoring amendment, this Court has directed that upon denial of a motion to amend such exercise of discretion should be supported by specific findings as to *reasons* for the same. [*Ben P Fyke & Sons, Inc v Gunter Co*, 390 Mich 649, 656-57; 213 NW2d 134 (1973) (internal quotation marks and citations omitted).]

-11-

At issue in this case is whether there was undue delay, a repeated failure to cure the deficiency, or undue prejudice. "The prejudice must stem from the fact that the new allegations are offered late and not from the fact that they might cause the defendant to lose on the merits." *Knauff v Oscoda Co Drain Comm'r*, 240 Mich App 485, 493; 618 NW2d 1 (2000); see also *Fyke*, 390 Mich at 657-658. Instead, "[p]rejudice to a defendant that will justify denial of leave to amend arises when the amendment would prevent the defendant from having a fair trial." *Knauff*, 240 Mich App at 495. Our Supreme Court has held that "a trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving would rely on the new claim or theory at trial." *Weymers*, 454 Mich at 659-60. Therefore, a litigant's ability to amend his complaint must be weighed against the public's and other litigant's interest in "the speedy resolution of disputes." *Id.* at 660. While "delay alone is not a sufficient basis for refusing an amendment," "[d]efense of a new claim obviously will require additional rounds of discovery, in all probability interview of new witnesses, gathering of further evidence, and the identification of appropriate legal arguments" and a plaintiff "is not entitled to impede justice by imposing even reasonable preparation intervals *seriatim*." In *Weymers*, our Supreme Court cited with approval, a Sixth Circuit rationale:

> A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amended complaint . . .In complex cases such as this one, . . .it is particularly likely that drastic amendments on the eve of trial will prejudice the defendants . . . Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial. [*Id.* at 661-662, quoting *Priddy v Edelman*, 883 F 2d 438, 446-447 (CA 6, 1989).]

The probate court indicated that it believed Daniel had been sitting on his claims. In response to Daniel's attorney's claim that the other litigants had been provided with receipts in support of Daniel's claim for reimbursement, the probate court stated:

> The problem though, Ms. Longoria is that Dan knew it. He's been sitting on these receipts since '92 if not before as Mr. Miller said. So he knows that this is part of the heart of his case and yet he failed to plead it right on down the road even to the point of early in 2014 he's told he's got two weeks to amend this stuff; still failed to do it. It's not fair, it's [just not] to all of these other parties.

> \*\*\*

> The other thing is if this . . . were a personal injury case where there were multiple parties, you make your settlement with one of them, or two of them, or three of them, you're done with that person. And in this case you can't say there are four parties, but I'm only going to sue three of them; of course I'm letting you three know I've got a claim against the forth [sic], too. It doesn't save your ability to turn around late and sue the fourth person. And I feel that's kind of like

-12-

what we have here, if you're going to sue someone in a [personal injury] case our rule[s] say you've got to sue everybody. You can't save someone for later, and someone for later yet. And in a way that's what you've done with your pleadings, you've sued three people, or you've made three claims or whatever, but you saved that fourth and saved it, and saved it, and saved it, it just wasn't [done] properly.

The probate court did not abuse its discretion when it denied Daniel's motion for leave to amend the pleadings to include a claim for reimbursement when the claim was the result of an undue delay that resulted in prejudice to the other litigants. As the probate court noted, it had issued an order on January 21, 2014 that provided:

> IT IS ORDERED that a Pre-Trial Hearing shall be held in this case on Tuesday, March 4, 2014, at 10:00am, with a Trial to be held on Tuesday-Friday, April 22-25, 2014.

> IT IS FURTHER ORDERED that Attorney Dianne M. Longoria shall have two (2) weeks from January 8, 2014, to submit amended pleadings, and, thereafter, all parties shall have two (2) weeks to respond to said pleadings.

> IT IS FURTHER ORDERED that discovery shall close on March 22, 2014.

Therefore, Daniel had already been given an opportunity to amend, but failed to do so and, worse yet, failed to seek leave to amend his pleadings until after the parties had filed their motions for summary disposition in November 2014.

Daniel argues that the parties' November 2014 Settlement Agreement indicates that the parties had contemplated – and expected – to litigate additional issues, including Daniel's claim for reimbursement. However, the unambiguous language of the Settlement Agreement belies that claim. The Settlement Agreement provides:

> 15. There remain outstanding in Case No. 12-19780-PD-T claims by Daniel Berg versus Melvin Berg and a counter-complaint against Daniel Berg by Melvin Berg regarding various matters, including ownership of certain identified personal property; further, there remain outstanding claims and counterclaims in Case No.s' [sic] 12-5151-TV and 12-5152-TV, and to the extent applicable, in Case No. 12-5182-GA, and in Case No. 12-5131-CA (Newaygo Probate Court), in regard to outstanding claims for compensation and/or expenses as made by Daniel Berg against Melvin Berg, *but only as pleaded **and limited only to those pleaded***; the above-recited outstanding and remaining claims and causes of action shall not be deemed a part of nor affected by the terms and provisions of this Settlement Agreement and Order, and same remain unresolved and shall be determined by trial, settlement or other disposition at a later date.

> 16. The outstanding and remaining issues referenced in Paragraph 15 above are and shall be limited to those pleaded and/or as allowed by the trial court, and *nothing in this Settlement Agreement shall be construed as adding additional*

*issues or claims made by any of the parties; or, providing the opportunity for adding same by any party.*

17. In the event Daniel Berg asserts there are outstanding items that have not been pleaded in any of the above referenced cases and causes of action, *he may motion the Court to add or amend pleadings accordingly* – which may be done by Daniel Berg in all referenced cases either in Probate Court or in Circuit Court, and the orders entered after hearing on said motions so filed by Daniel Berg shall be applicable to this Settlement Agreement for the purposes stated. [Emphasis added.]

The Settlement Agreement reflects what the parties discussed when they placed the settlement on the record on August 18, 2014:

MR. SHUITEMAN [attorney for Catherine]: All right. The next item. Then there remain the issues of expenses that Daniel Berg is claiming from Melvin and any counterclaims to that. There remains the claim and delivery action that Daniel Berg has filed against Melvin Berg and any counterclaims to that. And there is also the remaining issues in the TV cases as to any disputed personal property items, pink-tagged items that have been marked by Daniel Berg as his, and other items missing, and all of those are going to be reserved for trial presumably during the November dates that the court has previously specified. Is that correct?

MS. DYKMAN [conservator/guardian/trustee]: I would say it's correct except for that it's *limited to whatever has previously been pled.* So whatever characterization we are placing on it today, *we are limited to whatever was pled in the original pleadings.*

MR. SCHUITEMAN: Is that correct? Does everybody agree with that?

MS. LONGORIA [attorney for Daniel]: Could you repeat what you said about the claim and delivery, please.

MR. SCHUITEMAN: I just said that the counterclaim that was filed by Daniel Berg against Melvin Berg remains standing, as well as any counterclaims that were filed by Melvin Berg against Daniel Berg as to any personal property claimed in that particular action. And Ms. Dykman has indicated that that was to be limited to those matters that have been pleaded.

MS. LONGORIA: Yes.

MR. SCHUITEMAN: Because I recall your proposed amendment to that was denied by the court.

MS. LONGORIA: Yes, that is correct. The expenses is the portion that I was trying to have repeated.

MR. SCHUITEMAN: Oh, the expenses. I just stated that it was the same thing. Basically Daniel Berg has claimed certain expenses are such that he is entitled to reimbursement from Melvin Berg, and I don't know exactly what the status of that is, but, presumably, if there are any counters to that on behalf of Melvin Berg, those will be expressed in that action as well.

MS. LONGORIA: Okay.

MS. DYKMAN: My issue with it, just so we are clear, again, especially as to expenses, *whatever has been pled* as far as Dan claiming his right to be reimbursed for expenses, because I am not sure those have been pled, but obviously there is a lot of cases. So *we are limited to our pleadings*. If he has claimed expenses in a probate number that is still pending, he will be entitled to litigate those. We have not resolved those. But *we are limited to our pleadings*. What we are doing today by saying this is not opening up another.

MR. SCHUITEMAN: Do you agree with that?

MS. LONGORIA: And just for clarification it's my understanding that the money judgment that's requested in the claim and delivery is for the expenses. Is that what your interpretation was as well, Ms. Dykman?

MS. DYKMAN: The money judgment?

MS. LONGORIA: The request for. In the claim and delivery there is the supplemental claim and there was a request for a supplement, I believe, and is that –

MS. DYKMAN: Sorry. In your claim and delivery complaint?

MS. LONGORIA: In Mr. Berg's claim and delivery, yes.

MS. DYKMAN: In the complaint that you filed for claim and delivery, your supplemental complaint indicates cattle may be damaged as well as crops due to inability to access them. All I want to do is *limit us to our pleadings*.

MS. LONGORIA: I think that Dan wants his right for the expenses reserved.

MS. DYKMAN: *If he pled it*, he can certainly try it. In my opinion, *you can't open a door today* claiming expenses with something that has never been pled. Has it not been pled?

MS. LONGORIA: I would have to look at the probate matter, all of the probate pleadings to see.

MR. SCHUITEMAN: So where are we going to leave that? I guess if they haven't been pled – I guess, the way I would look at it, if they haven't been

plead [sic] and you think you are entitled to amend it to include them, Ms. *Dykman is not agreeing* to that at this point and will oppose it, and I suppose that you can file a motion with the court –

MS. DYKMAN: Sure.

MR. SCHUITEMAN: -- to ask for it, and the court will decide whether they are allowed in or not. Is that fair?

MS. DYKMAN: That's fair.

MR. SCHUITEMAN: Is that acceptable to you folks?

**

MS. LONGORIA: Yes. [Emphasis added.]

The probate court did not find support for Daniel's position in the parties' Settlement Agreement and noted: "I'm not convinced that the settlement agreement at pages 9 and 10 were a license to thoroughly amend the pleadings. That's particularly true in light of the . . .language of August 18, 2014." It cannot be said that the trial court abused its discretion when it concluded that there was nothing about the Settlement Agreement that relieved Daniel of his obligation to properly plead his case.

In conclusion, the trial court did not abuse its discretion when it determined that Daniel had not pled a claim for reimbursement in the Amended Petition of the Notice of Issues. Nor did the trial court abuse its discretion when it denied Daniel's request to amend the pleadings where there was undue delay, a repeated failure to cure the deficiency, and undue prejudice.

III. SUMMARY DISPOSITION

Daniel next argues that the probate court erred as a matter of law in granting summary disposition pursuant to MCR 2.116(C)(8) when it ruled that his claims were (1) barred by the statute of frauds (2) barred by res judicata and (3) gratuitous. We disagree.

"This Court reviews de novo a circuit court's decision whether to grant or deny summary disposition." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012).

MCR 2.116(C)(8) provides that a litigant is entitled to summary disposition if "[t]he opposing party has failed to state a claim on which relief can be granted." "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the basis of the pleadings alone and the ruling is reviewed de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). A motion for summary disposition under (C)(8) "may not be supported or opposed with affidavits, admissions, or other documentary evidence, and must be decided on the basis of the pleadings alone. The trial court reviewing the motion must accept as true all factual allegations supporting the claim, and any reasonable inferences or conclusions that might be drawn from those facts." *Gorman v Am Honda Motor Co, Inc*, 302 Mich App 113, 131-132; 839 NW2d 223 (2013) (internal citations omitted). However, "the mere statement of a pleader's

-16-

conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994). A trial court may only grant summary disposition under MCR 2.116(C)(8) "when a claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Gorman,* 302 Mich App at 131-132.

After denying Daniel's motion to amend, the probate court then asked the parties, "Alright, that leaves Summary Disposition. Whose motion is that?" The following exchange took place:

> MR. SCHUITEMAN [Catherine's attorney]: I guess my question is – I guess my point is, is that the Court is already not allowed her to amend so she hasn't pled it, so as a consequence there isn't anything for us to file a Motion for Summary Disposition.

> THE COURT: There are no other issues left, is that right?

> MR. SCHUITEMAN: Well that would be the way I would read it.

> MR. MILLER [Rebecca's attorney]: I would agree with Attorney Schuiteman.

> MS. LONGORIA [Daniel's attorney]: I don't know that the Judge ruled that it's not pled, just that it can't be amended.

> MS. DYKMAN [trustee]: That would be the issue.

> THE COURT: I believe that's true.

> MR. SCHUITEMAN: All right.

> MS. DYKMAN: Then we would proceed with our motions.

After listening to Melvin's, Rebecca's and Catherine's attorneys argue the substantive motion for summary disposition, the probate court asked Schuiteman:

> THE COURT: So if I were to grant the motion, am I granting it on [2.116(C)(4), (8), or (10)]? If you've got your Court Rules there –

> MR. SCHUITEMAN: Well, I – I well 10 is no (indiscernible) material fact –

> THE COURT: And that's kind of what I've been honing in on.

> MR. SCHUITEMAN: Right, and (C)(8) we've already dealt with essentially as far as I can tell because of the fact that she said she can't amend; she hasn't plead [sic] it properly because she hasn't stated anything.

> THE COURT: So she's got to claim that –

-17-

MR. SCHUITEMAN: Well I mean – and – and contrary of what Ms. Reed says, and I recognize that I didn't just take the bar exam and all of that, but (C)(8) says that it's got to be based on the pleadings (indiscernible). And if you don't state a [cause] of action there, you're out of court. I think that's basically another reason in which we can say that this case should be decided.

Rebecca's attorney, Mark Miller, added:

MR. MILLER: . . .You know, the biggest issue of all, again, that I – that I believe that this court can rest it's hat on is that these issues weren't properly pled. And because they weren't properly [pled], you don't even get any further.

THE COURT: Isn't that the heart of it?

MR. MILLER: Sure. I don't think – nothing else matters, if you don't plead it to properly get that matter before the Court, nothing else matters.

THE COURT: There's nothing else left.

MR. MILLER: We can talk about whether or not the trust was valid, not valid; whether or not, you know, the car was green, blue, yellow, purple, none of that matter [s] because it wasn't properly before the Court. And I think for that reason, your Honor, I – I don't think there needs to go – we need to go any further and I don't think I'm going to belabor that point anymore.

Before Daniel's attorney had a chance to respond to the substantive motion, the probate court warned her: "I'm leaning toward granting the motion [for summary disposition]. I want you to know that so you'll respond the best you can. And the reason I'm leaning that way is based upon MCR 2.116[(C)(8)], 'The opposing parties failed to state a claim to which relief can be granted.' I think your pleadings are grossly insufficient to sustain this part of your complaint – or answer perhaps I should say." Daniel's attorney then focused her argument on the fact that Daniel had, in fact, properly pled a claim for reimbursement.

At the conclusion of arguments, the probate court noted: "Look, I think I've heard enough, I – I thought this case would be exceedingly difficult today and I've sat here and listened to everything each of you have said and tried to carefully weigh it. I don't think it's as hard as I thought at all. I think it's fairly plain, and clear, and concise." The probate court determined that Daniel failed to plead a claim for reimbursement, as discussed above. It cited MCR 2.111 and concluded, "I think there's complete failure here to meet the terms of that court rule. I think *that's dispositive of this case*." (Emphasis added.) Daniel never properly pled a claim for reimbursement and, as such, he failed to state a claim on which relief can be granted. The probate court properly granted summary disposition pursuant to MCR 2.116(C)(8).

"When a trial court grants summary disposition pursuant to MCR 2.116(C)(8), or (C)(10), the opportunity for the nonprevailing party to amend its pleadings pursuant to MCR 2.118 should be freely granted, unless the amendment would not be justified. MCR 2.116(I)(5)." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52-53; 684 NW2d 320 (2004). An amendment to the pleadings in this case was "not justified." As previously stated, a court may deny an

amendment for reasons such as undue delay, repeated failure to cure the deficiency with previously allowed amendments, and undue prejudice to the opposing party. In denying Daniel's motion to amend the pleadings, the probate court referred to each of these particularized reasons and we have already indicated that the probate court was well within its discretion.

Affirmed. As the prevailing party, appellees may tax costs. MCR 7.219.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood