*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* WALLACE HOWE FAMILY TRUST

---

GEORGE RIZIK II, Successor Trustee for the
WALLACE HOWE FAMILY TRUST,

        Appellee,

v

THOMAS HOWE,

        Appellant,

and

STEVEN E. HOWE,

        Other Party.

UNPUBLISHED
August 18, 2022

Nos. 355909; 357016; 357658
Genesee Probate Court
LC No. 18-210540-TV

---

*In re* GUARDIANSHIP OF BEVERLY M. HOWE.

---

KRAIG S. SIPPELL, Guardian for BEVERLY M.
HOWE,

        Appellee,

v

THOMAS HOWE,

        Appellant,

and

Nos. 357023; 358509
Genesee Probate Court
LC No. 2018-210538-GA

-1-

STEVEN HOWE and ANDREW O. STOUT,

        Other Parties.

_____

*In re* BEVERLY M. HOWE REVOCABLE TRUST.

_____

GEORGE F. RIZIK III,

        Petitioner-Appellee,

v                                                                                      Nos. 358199; 358512
                                                                                       Genesee Probate Court
KRAIG SIPPELL,                                                                         LC No.  2020-215114-TV

        Respondent-Appellee,

and

THOMAS HOWE,

        Respondent-Appellant,

and

STEVEN HOWE,

        Respondent.

_____

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

In these consolidated appeals, appellant Thomas Howe appeals as of right several orders relating to his deceased mother's guardianship, her revocable trust, and a family trust created by his deceased father, Wallace Howe. We affirm in part, vacate in part, and remand to the probate court for further proceedings consistent with this opinion.

These consolidated appeals involve trust and guardianship proceedings under the Estate and Protected Individuals Code ("EPIC"), MCL 700.1101 *et seq*. Beverly Howe was the widow of Wallace Howe, the settlor of the Wallace Howe Family Trust (the "family trust"). Beverly and Wallace are the parents of appellant and Steven Howe. George Rizik was appointed trustee of the family trust. On appeal, appellant challenges the probate court's orders approving Rizik's different accounts and granting his petition for attorney fees in the family trust case in Docket Nos. 355909, 357016, and 357658.

After Beverly was diagnosed with dementia in 2017, a guardianship was established and Kraig S. Sippell was appointed as Beverly's guardian. During the guardianship proceedings, the probate court held appellant in contempt several times for violating various court orders. The court also granted Sippell's petitions for attorney fees, over appellant's objections. Appellant appeals these orders in Docket Nos. 357023 and 358509.

Beverly also created her own revocable trust. Appellant and Steven initially served as cotrustees of Beverly's revocable trust, but on June 2, 2020, the probate court removed them as cotrustees and appointed Sippell as successor trustee. In a prior appeal by appellant, this Court held that the probate court failed to cite record evidence in support of its decision. *In re Beverly M Howe Revocable Trust*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2021 (Docket No. 354458), p 8. Accordingly, this Court vacated the portion of the probate court's order appointing Sippell as successor trustee and remanded the case to the probate court for it to "explain and rationalize the basis for its ruling." *Id.* In the meantime, Beverly died on March 3, 2021. On remand, the probate court issued findings of fact and reappointed Sippell as trustee of Beverly's revocable trust, *nunc pro tunc*. The court also denied appellant's motion for immediate distribution of the assets of the revocable trust. Later, over appellant's objections, the probate court granted Sippell's petition for attorney fees. Appellant appeals these orders in Docket Nos. 358199 and 358512.

## I. WALLACE HOWE FAMILY TRUST

### A. DOCKET NO. 355909

Appellant first argues that the probate court erred by denying his demand for a jury trial on his petition to remove George Rizik as trustee.

Preliminarily, we conclude that this issue is moot. "An issue is moot if an event has occurred that renders it impossible for the court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Barrow v City of Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) (quotation marks and citation omitted). After Beverly's death on March 3, 2021, Rizik petitioned the court for instructions regarding distribution of the family trust assets. On August 27, 2021, the probate court issued an order requiring Rizik to distribute appellant's share of the family trust to appellant within 30 days. Even if this Court were to determine that appellant was entitled to a jury trial on his petition to remove Rizik as trustee, a decision to that effect would have no practical effect considering that the trust has now been terminated and the assets distributed. Because the trust is no longer active and Rizik is no longer serving as trustee, this issue is moot. In any event, appellant would not be entitled to relief on this issue.[1]

---

[1] MCR 5.158(A) only entitles a party to a jury trial for "an issue for which there is a right to trial by jury[.]" Appellant sought Rizik's removal as trustee for breach of his fiduciary duties. Issues involving a trustee's prudence are for the probate court, not a jury, to decide. *In re Messer Trust*, 457 Mich 371, 387; 579 NW2d 73 (1998). Accordingly, appellant was not entitled to a jury determination on his petition to remove Rizik as trustee.

-3-

Appellant also argues that the probate court erred by declining to give him more time to present objections to Rizik's second annual account as trustee. We disagree.

"This Court reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). A probate court abuses its discretion if its decision falls outside the range of reasonable and principled outcomes. *In re Gerstler*, 324 Mich App 494, 507; 922 NW2d 168 (2018). A probate court's factual finding is clearly erroneous if this Court is left with a definite and firm conviction that the court made a mistake, even if there is evidence to support the finding. *In re Conservatorship of Brody*, 321 Mich App 332, 336; 909 NW2d 849 (2017). Questions of statutory interpretation are reviewed de novo. *In re Portus*, 325 Mich App at 381.

In October 2020, Rizik filed a petition for approval of his second annual account and allowance of costs and fees, which was noticed for hearing on December 2, 2020. A proof of service indicates that the petition and notice of hearing were served on appellant by mail on October 23, 2020. The notice of hearing stated that the petition would be reviewed without a formal hearing, unless objected to in writing by an interested party. Appellant did not file objections to the accounting, but on December 2, 2020, the probate court adjourned the matter until December 10, 2020, for a formal hearing by Zoom. On December 7, 2020, appellant filed written objections to the adjournment order on the ground that he did not receive sufficient notice of the original hearing date, and that the rescheduled date was less than 14 days after the adjournment order was issued. In his written objections, appellant never asserted that he did not receive the accounting, but only that he "was never served a Notice of Hearing setting this matter for December 2, 2020" and he was "unaware that this matter was up for hearing on December 2, 2020[.]"

At the hearing on December 10, 2020, appellant's counsel acknowledged that he did not submit any written objections to Rizik's second account, and he did not raise any oral objections to the accounting itself. Rather, he objected to proceeding with the hearing on the ground that he did not receive proper notice of the hearing. The probate court determined that the matter was "appropriately set for today" and allowed the second account because no objections were filed.

MCR 5.119 provides:

> (A) Right to Hearing, New Matter. An interested person may, within the period allowed by law or these rules, file a petition and obtain a hearing with respect to the petition. The petitioner must serve copies of the petition and notice of hearing on the fiduciary and other interested persons whose addresses are known or who are authorized users of the electronic filing system under MCR 1.109(G)(6)(a).

> (B) Objection to Pending Matter. An interested person may object to a pending petition orally at the hearing or by filing and serving a document which conforms with MCR 1.109(D) and MCR 5.113. The court may adjourn a hearing based on an oral objection and require that a proper written objection be filed and served.

-4-

(C) Adjournment. A petition that is not heard on the day for which it is noticed, in the absence of a special order, stands adjourned from day to day or until a day certain.

(D) Briefs; Argument. The court may require that briefs of law and fact and proposed orders be filed as a condition precedent to oral argument. The court may limit oral argument.

MCR 5.108(A) and (B)(1) provide that a petition must be served at least seven days before the date set for hearing if the petition is personally serviced, or at least 14 days before the date set for hearing if the petition is served by mail. However, MCR 5.108(C) provides that "[e]lectronic service . . . must be made at least 7 days before the date set for hearing *or an adjourned date*." (Emphasis added.)

On appeal, as in the probate court, appellant does not raise any substantive objections to Rizik's second annual account. Instead, he makes only a cursory argument that he should have been allowed more time to file objections to the account. To the extent that appellant suggests that he did not receive proper notice of the original December 2, 2020 hearing date, the record does not support his claim. According to the proof of service in the lower court file, appellant was served by mail on October 23, 2020, with a copy of the petition to allow Rizik's second account and a notice of hearing indicating that the petition would be heard on December 2, 2020. This notice of hearing complied with the 14-day requirement of MCR 5.108(A) for service of a petition by mail. Although appellant denied receiving notice of the hearing, the proof of service indicates that the petition to allow the second annual account and the notice of hearing for that petition were mailed together, and appellant never denied in his written objections to having received the second account.

Regardless, the probate court agreed to adjourn the December 2 hearing date, and adjourned the hearing until December 10, 2020, to provide appellant with additional time to file objections to the second account. At the adjourned hearing, however, appellant did not raise any substantive objections to the account, but again only argued that he had not had time to prepare written objections. Although appellant argued below that the adjourned hearing was required to be held at least 14 days after the adjournment order was issued, he does not raise that argument on appeal. In any event, the 14-day time period only applies when service is by mail. Where service is made electronically, it is only required to be served "at least 7 days before the date set for hearing or an adjourned date." MCR 5.108(C). The record indicates that the adjournment order was served electronically on December 2, 2020, on all parties, including both appellant and appellant's counsel, and appellant's counsel admitted receiving notice of the adjourned date on December 2, more than seven days before the December 10, 2020 hearing date. Therefore, the probate court correctly found that the matter was "appropriately set for today."

Appellant argues that the probate court should have given him more time to file written objections to the second account. MCR 5.119(B) provides that a probate court "may adjourn a hearing based on an oral objection and require that a proper written objection be filed and served." "The term 'may' presupposes discretion and does not mandate an action." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 32; 896 NW2d 39 (2016) (cleaned up). Thus, the probate court was not obligated to allow appellant more time to file objections. Considering that the probate

court had already adjourned the matter once and that appellant did not attempt to raise any substantive objections to Rizik's second account, even orally, the probate court did not abuse its discretion by declining to further adjourn the matter. Moreover, even on appeal, appellant does not indicate what meritorious objections he could have raised to the second account. Therefore, he has not demonstrated that any error requires appellate relief. See MCR 2.613(A) ("An error in . . . a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

B. DOCKET NO. 357016

Appellant next challenges the probate court's April 9, 2021 order approving Rizik's final account and awarding costs and fees of $20,295.18.

When reviewing a probate court's award of attorney fees for administration of a trust, this Court reviews the court's underlying findings of fact for clear error and reviews any questions of law de novo. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). But the court's "decision whether to award attorney fees and the determination of the reasonableness of the fees" are reviewed for abuse of discretion. *Id.*

Appellant filed objections to Rizik's claim for attorney fees in the final accounting. Appellant argued that Rizik listed 13 charges for services that were fiduciary rather than legal services, and therefore, were not chargeable at the requested attorney-fee rate of $300 an hour. These charges included 2.5 hours for attending his own deposition, responding to e-mails regarding distributions, completing a trust certificate, reviewing appellant's living expenses, and phone calls with Steven Howe regarding investment losses. Appellant also listed six pages of entries that he believed involved charges that were unreasonable, nonbeneficial to the trust, self-serving, or vague. He provided specific explanations for his belief that several of these charges were not justified. The charges contested by appellant totaled $10,530. The probate court stated that it found that all of Rizik's charges were "justified and reasonable" and approved the account as submitted.

The party claiming attorney fees bears the burden of proving the reasonableness of the requested fees. *Smith v Khouri*, 481 Mich 519, 528-529; 751 NW2d 472 (2008). MCL 700.7904 provides:

> (1) In a proceeding involving the administration of a trust, the court, as justice and equity require, may award costs and expenses, including reasonable attorney fees, to any party who enhances, preserves, or protects trust property, to be paid from the trust that is the subject of the proceeding.

> (2) Subject to subsection (3), if a trustee participates in a civil action or proceeding in good faith, whether successful or not, the trustee is entitled to receive from trust property all expenses and disbursements including reasonable attorney fees that the trustee incurs in connection with its participation.

> (3) A court may reduce or deny a trustee's claim for compensation, expenses, or disbursements with respect to a breach of trust.

-6-

"Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, expeditiously, in accordance with its terms and purposes, for the benefit of the trust beneficiaries, and in accordance with this article." MCL 700.7801. "A trustee shall administer the trust solely in the interests of the trust beneficiaries." MCL 700.7802(1). A trustee may receive reasonable compensation for services rendered for the trust. MCL 700.7802(7)(b). However, an attorney acting as a fiduciary is not entitled to charge attorney rates for fiduciary services. *Wisner v Mabley Estate*, 70 Mich 271, 285; 38 NW 262 (1888).

Appellant challenges 13 attorney-fee charges that he argues were not reasonable because they involved fiduciary services, not legal services, for which Rizik charged his customary attorney-fee rate. The probate court stated that the services provided were justified and reasonable, and it found that the $300 hourly rate for attorney fees was reasonable, but it did not address appellant's argument that this rate was not appropriate for all the services charged. Further, although the probate court generally stated that the charges were justified and reasonable, it did not address any of appellant's challenges to specific fees and charges.

In a prior appeal in the related Beverly Howe family trust, appellant similarly challenged Rizik's requested fees for several items, including that "several services that the successor trustee sought recovery for . . . were performed by a fiduciary, rather than an attorney, but under circumstances in which the successor trustee did not seek fiduciary fees[.]" *In re Beverly Howe Family Trust*, unpublished per curiam opinion of the Court of Appeals, issued December 2, 2021 (Docket No. 355094), p 4. In that case, the probate court similarly failed to address appellant's specific challenges to Rizik's fees and charges. This Court held that "[w]ithout any findings or an explanation of the probate court's decisions on these contested issues, this Court, as an error-correcting Court, is not in a position to review the probate court's ultimate determination or determine whether it erred by approving the contested fees and charges." *Id.* Accordingly, this Court remanded the case to the probate court "to provide factual findings regarding [appellant]'s specific challenges to Rizik's fees and charges sufficient to facilitate appellate review." *Id.*

Similarly, in this case, the probate court generally stated that Rizik's charges were justified and reasonable, but it did not address any of appellant's challenges to specific fees and charges, and it did not address appellant's claims that an attorney-fee rate was not appropriate for certain fiduciary services. Without any findings or an explanation of the probate court's decision on these contested matters, this Court is not in a position to review whether the probate court properly approved the contested charges. Therefore, we remand this case to the probate court for findings regarding appellant's specific challenges to the contested fees and charges sufficient to facilitate appellate review.

## C. DOCKET NO. 357658

Third, appellant argues that the probate court erred when, after stating at a hearing on April 9, 2021, that the remaining assets of the family trust could be distributed "now," its order approving the distribution of the trust assets did not provide for a specific date of distribution. Regardless, later the probate court approved Rizik's plan to delay distribution of appellant's share pending appellant's appeals and denied appellant's motion to issue a "corrected" written order consistent with its oral statement on April 9. We conclude that this issue is moot.

Appellant complains that the probate court erred by denying his request for immediate distribution of his share of the family trust in accordance with its April 9, 2021 oral ruling. It is undisputed, however, that the court subsequently authorized that distribution in an order dated August 27, 2021. Because the relief appellant seeks—distribution of his share of the family trust—was granted in the August 27, 2021 order, there is no additional remedy that this Court can provide. Therefore, this issue is moot. *Barrow*, 305 Mich App at 659.

Appellant also argues that the probate court erred by denying his motion to "void" a contempt order from the guardianship case that was also entered in the file for the family trust case. We disagree.

In an order dated December 14, 2020, the probate court found appellant in contempt in the guardianship case for visiting Beverly, in violation of a prior order that had suspended his visitation. On February 26, 2021, the probate court fined appellant $1,000 for this contempt violation, and ordered that this money was "to be paid from [appellant's] beneficiary interest in the proceeds of the Wallace Howe Family Trust." The February 26 order was entered into the files for both the guardianship case and the family trust case. Appellant later moved to "void" the order from the family trust file, which the probate court denied.

Appellant's motion sought relief from the February 26, 2021 order under MCR 2.612(C). A court may grant relief from a judgment or order on the ground that the order is void. MCR 2.612(C)(1)(d). A trial court's decision regarding a motion for relief from a judgment or order is reviewed for an abuse of discretion. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002). Although appellant correctly asserts that he was found in contempt only in the guardianship case, not the family trust case, the February 26 order directed that the imposed sanction of a $1,000 fine was "to be paid from [appellant's] beneficiary interest in the proceeds of the Wallace Howe Family Trust." As the probate court observed, there was no suggestion in the order that appellant was found guilty of contempt in the family trust case, or that appellant was subject to cumulative sanctions for contempt. But, because the order affected appellant's beneficiary interest in the family trust, it was appropriate for the probate court to also enter the order in that case. Accordingly, the probate court did not abuse its discretion by denying appellant's motion to void the February 26, 2021 order from the family trust file.

## II. GUARDIANSHIP OF BEVERLY HOWE

### A. DOCKET NO. 357023

#### 1. CONTEMPT ORDERS

During the guardianship proceedings, the probate court entered four orders finding appellant in contempt for violating its prior orders. The first contempt order arose from appellant's interference with Steven Howe's visitation with Beverly, his attempts to influence Beverly against Steven, and his interference with the guardian's decisions in violation of the court's September 11, 2018 temporary guardianship order. The second and third contempt orders arose from appellant's delay in producing documents, Beverly's medications, and Beverly's house, a car battery, and car keys for Sippell, in violation of orders entered on February 11, 2019 and June 3, 2019. The fourth contempt order arose from appellant's participation in a visit with Beverly at her care facility on

September 23, 2020, in violation of the probate court's June 14, 2019 order suspending appellant's visitation.

"We review a trial court's issuance of a contempt order for an abuse of discretion and the factual findings supporting the order for clear error." *In re Moroun*, 295 Mich App 312, 335; 814 NW2d 319 (2012). "The abuse of discretion standard recognizes that there will be circumstances where there is no single correct outcome and which require us to defer to the trial court's judgment; reversal is warranted only when the trial court's decision is outside the range of principled outcomes." *Porter v Porter*, 285 Mich App 450, 455; 776 NW2d 377 (2009). Legal issues, "such as the nature of the contempt orders and whether the contempt statute permitted the sanctions imposed," are reviewed de novo. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000).

"Contempt of court is a wilful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). "Courts have inherent independent authority, as well as statutory authority, to punish a person for contempt." *Id*. Parties, attorneys, and all other persons may be punished for contempt for disobedience to any lawful order, decree, or process of the court. MCL 600.1701(g). Direct contempt is contemptuous behavior that occurs in the presence of the court. *In re Contempt of Robertson*, 209 Mich App at 437-438. The probate court does not need to conduct a separate hearing regarding direct contempt because the probate court has personal knowledge of the conduct. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App at 712. "If the contemptuous conduct occurs outside the court's direct view, i.e., it is 'indirect' contempt, the court must hold a hearing to determine whether the alleged contemnor actually committed contempt." *Id*. at 712-713. "This hearing must follow the procedures established in MCR 3.606 and afford some measure of due process before the court can determine whether there is sufficient evidence of contempt to warrant sanctions." *Id*. at 713.

The procedure for issuing a contempt order is governed by MCR 3.606, which states, in pertinent part:

> (A) Initiation of Proceeding. For a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either
>
> (1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or
>
> (2) issue a bench warrant for the arrest of the person.

Regarding the first contempt order, appellant acknowledges that the relevant portions of the September 11, 2018 order prohibited him from making disparaging comments about family members in Beverly's presence, interfering with the guardian's decisions, or interfering with visitation by other family members. He argues, however, that the evidence did not support the probate court's finding of contempt for violating this order. We disagree.

Testimony by Steven and Sippell established that appellant persistently interfered with Steven's visitation by refusing to leave in accordance with the Helping Hands arrangement, by

discouraging Beverly from conversing with Steven, and by influencing Beverly to accuse Steven of taking her property. Testimony also indicated that appellant interfered with Sippell's arrangements for managing Beverly's sources of income. Although appellant denied interfering with Steven's visits and offered explanations for his financial actions, it is apparent that the court found that Steven's and Sippell's testimony was credible, and that appellant's was not. "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). Moreover, testimony from Beverly's court-appointed guardian, Toni Cerny, and from Sippell regarding appellant's preoccupation with denigrating Steven corroborated Steven's testimony. The probate court did not clearly err by finding that the evidence showed that appellant violated the September 11, 2018 order in several respects.

Regarding the second contempt order, appellant states that he was never served with Sippell's emergency motion to compel appellant to produce information and documents related to Beverly's medical care and household, and therefore, had insufficient time to respond. However, he appeared at the hearing and admitted that he did not provide required information and property to Sippell, and instead, took the items with him when he left Beverly's house. He argues that his statements at the hearing did not establish violations of the court's order because the order "does not contain a provision that he could not protect certain items of his mother's property from theft, misuse or loss." He claims that he tried to deliver the items, but "Sippell remained elusive." The February 11, 2019 order stated "that all funds and personal property, by whomever held . . . shall be turned over to the guardian within 10 days . . . ." The house keys, car keys, medication, and documents were Beverly's personal property, not appellant's. Appellant was therefore obligated to turn these items over to Sippell. Appellant admitted being in possession of the items and not only did he fail to turn them over to Sippell, he admittedly removed the items from Beverly's house and took them with him. Appellant's only argument in his defense is that he was not prohibited from safeguarding Beverly's property. However, the order required appellant to provide the items to Sippell. The probate court did not clearly err by finding that appellant's admissions established that he violated the February 11, 2019 order.

Appellant argues that he was denied a fair opportunity to be heard because he did not receive the written motion in time to prepare a proper response. However, the response his counsel filed indicated that he understood that Sippell sought return of keys, medication, and documents. Moreover, the court held a hearing on the motion and appellant did not contend that he was unprepared to address the factual allegations in the motion. On the contrary, he admitted that he retained the items in question. His own admissions factually supported the court's contempt finding. Therefore, appellant is not entitled to relief.

Regarding the third contempt order, appellant again argues that there was no factual basis for holding him in contempt because he complied with everything that was required of him. He returned the Buick keys and the medication, and he gave the Prudential checks to his attorney, but his attorney delayed delivering them to Sippell and accepted responsibility for the delay in providing the benefit checks. Appellant denied that there were any blank checks or money orders, only money orders written for payments of property tax and water service. However, the documents, medications, and car battery were subjects of the previous order that appellant failed to fulfill. Appellant said he disposed of the Buick car battery because it was no good, but the June 3, 2019 order required him to replace any missing part in the Buick and he admittedly disposed of

the battery without replacing it. The probate court did not clearly err by finding appellant in contempt for violation of the June 3, 2019 order.

As to the fourth order, appellant initially argues that the finding of contempt was erroneous because the court's contempt order states that he violated an order dated June 4, 2019, and no order was issued on that date. Although the contempt order refers to a prior order dated June 4, 2019, it is apparent that the court intended to refer to its prior June 14, 2019 order because the factual basis for the finding of contempt was that appellant violated the order suspending his visitation, which was part of the June 14, 2019 order. Because appellant does not dispute that he had knowledge of the June 14 order and was aware that his visitation had been suspended, and it is clear from the record that the factual basis for the probate court's finding of contempt was that appellant violated the order suspending his visitation, appellant is not entitled to relief on the basis of this clerical error in the December 14, 2020 contempt order. See MCR 2.613(A) ("An error in . . . a ruling or order, . . . is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

Appellant also argues that the probate court erred by finding that he participated in the visit with Beverly on September 23, 2020, because the witness who testified regarding this alleged visit, Mary Ketterer, was not credible. Appellant asserts that Ketterer had a motive to retaliate against him because his wife filed a complaint against Ketterer's employer, Bella Vita, the care facility where Beverly was staying. He further argues that this Court's deference to the probate court's credibility determinations should not apply to Ketterer because she testified by telephone. Appellant cites no authority for this argument. Even though Ketterer testified by telephone, the probate court was still required to evaluate her credibility and we find no reason to depart from this Court's usual deference to a trial court's findings of credibility. See *In re LaFrance Minors*, 306 Mich App at 723. Ketterer's testimony supports the probate court's finding that appellant participated in the visit with Beverly, in violation of the court's order suspending appellant's visitation. The probate court did not clearly err by finding appellant in contempt.

2. APPROVAL OF GUARDIAN'S ACCOUNTS

Appellant argues that the probate court erred by approving Sippell's first, second, and third and final accounts in the guardianship case.

A probate court's approval of a fiduciary's accounting and attorney fees is reviewed for abuse of discretion. See *In re Estate of Adams*, 257 Mich App 230, 236; 667 NW2d 904 (2003). A probate court abuses its discretion if its decision falls outside the range of reasonable and principled outcomes. *In re Gerstler*, 324 Mich App at 507. The factual findings underlying the probate court's decision are reviewed for clear error. *In re Portus*, 325 Mich App at 381. A finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake was made, even if there is evidence to support the finding. *In re Conservatorship of Brody*, 321 Mich App at 336.

Appellant argues that the probate court erred by allowing the accounts without considering his objections. MCR 5.409(C) provides:

(1) *Filing, Service.* A conservator must file an annual account unless ordered not to by the court. A guardian must file an annual account if ordered by the court. The provisions of the court rules apply to any account that is filed with the court, even if the account was not required by court order. The account must be served on interested persons, and proof of service must be filed with the court. The copy of the account served on interested persons must include a notice that any objections to the account should be filed with the court and noticed for hearing. When required, an accounting must be filed within 56 days after the end of the accounting period.

(2) *Accounting Period.* The accounting period ends on the anniversary date of the issuance of the letters of authority, unless the conservator selects another accounting period or unless the court orders otherwise. If the conservator selects another accounting period, notice of that selection shall be filed with the court. The accounting period may be a calendar year or a fiscal year ending on the last day of a month. The conservator may use the same accounting period as that used for income tax reporting, and the first accounting period may be less than a year but not longer than a year.

(3) *Hearing.* On filing, the account may be set for hearing or the hearing may be deferred to a later time.

\* \* \*

(5) *Contents.* The accounting is subject to the provisions of MCR 5.310(C)(2)(c) and (d), except that references to a personal representative shall be to a conservator. A copy of the corresponding financial institution statement or a verification of funds on deposit must be filed with the court, either of which must reflect the value of all liquid assets held by a financial institution dated within 30 days after the end of the accounting period, unless waived by the court for good cause.

(6) *Periodic Review.* The court shall either review or allow accounts annually, unless no account is required under MCR 5.409(C)(1) or (C)(4). Accounts shall be set for hearing to determine whether they will be allowed at least once every three years.

Appellant objected to the first accounting on the basis that Sippell's $125 hourly rate was unreasonable, and then later belatedly asserted that there was an alleged $496.81 discrepancy in grocery purchases and receipts. The probate court considered these objections and expressly found that Sippell's hourly rate was reasonable. It further stated that it had reviewed the accountings line-by-line and found that all of the expenditures were justified. Although appellant asserts that Sippell should have been awarded fees based on a $90 hourly rate, he has not established that the probate court abused its discretion by allowing the $125 hourly rate. Appellant also asserts that a fiduciary performing administrative duties is not entitled to be compensated as an attorney for professional services, citing *Wisner*, 70 Mich at 285, but he does not identify any services by Sippell that he believes were charged at an improper rate. Appellant further asserts that he objected

-12-

to a miscellaneous adjustment of $398.07 and a double billing of $187.50, and asserts that Sippell had already been paid $1,000, but the record reflects that Sippell agreed to remove the two charges from his fee request and acknowledged that the balance owed for his fees should reflect the $1,000 payment that he already received. Appellant has not established any clear error in the probate court's determination that the first accounting was accurate.

With respect to the second accounting, appellant raised specific objections, such as that Sippell billed for 114.1 hours of services when only 8.81 hours were actually related to the guardianship. The probate court's general statement that it reviewed the accounting and found that all charges were justified was not sufficient to address appellant's specific objections. Again, without any findings or an explanation of the probate court's decision on these other contested matters, this Court is not in a position to review whether the probate court properly approved the second annual account. Therefore, we remand this case to the probate court for findings regarding appellant's specific objections to the second account.

Similarly, for the third and final accounting, the probate court merely indicated that it had reviewed the accountings and objections and found that Sippell's accountings were accurate, but it never addressed appellant's specific objections. The court's conclusory rejection of appellant's objections, without addressing the specific nature of the objections or explaining why it was rejecting them, is insufficient to allow this Court to determine whether the probate court properly approved the third and final accounts. Therefore, we similarly remand this case to the probate court for appropriate findings and for the court to explain and rationalize the basis for its decision to approve the third and final account.

### 3. ATTORNEY FEES

Andrew Stout was appointed to represent Beverly in the guardianship proceedings. In an order dated July 28, 2020, the probate court authorized Sippell "to retain counsel and have the fees paid by the ward's estate." After Beverly's death, when the probate court approved payment of $12,800 to Stout to compensate him for his representation of Beverly, the order stated, "Fees paid from Beverly Howe Trust proceeds." Similarly, the orders approving Sippell's annual accounts provide that "[f]ees may be paid from proceeds of Beverly Howe Trust."

On appeal, appellant argues that the probate court erred by not requiring service of Stout's petition for fees, and by authorizing payment of Stout's and Sippell's fees in the guardianship case from funds in Beverly's revocable trust. Appellant also raises this latter issue in his appeal in the revocable trust case in Docket No. 358512.

First, contrary to what appellant asserts, the probate court did not "fail[] to require service [of Stout's fee petition] upon Appellant." Rather, the probate court found that the fee petition was duly served on appellant's attorney. This finding is supported by the proof of service in the lower court file. Appellant did not supply a sworn statement or affidavit supporting his allegation that he never received service of Stout's fee petition. Accordingly, appellant fails to demonstrate that the probate court clearly erred by finding that the fee petition was properly served.

Second, we are not persuaded that the probate court erred by authorizing payment of Stout's and Sippell's fees in the guardianship case from funds in Beverly's revocable trust. "A

-13-

guardian is entitled to reasonable compensation for services as guardian and to reimbursement for room, board, and clothing personally provided to the ward, but only as approved by court order." MCL 700.5216(1). MCL 700.5413 provides: "If not otherwise compensated for services rendered, a visitor, guardian ad litem, attorney, physician, conservator, or special conservator appointed in a protective proceeding is entitled to reasonable compensation from the estate." Although appellant argues that the probate court erred by allowing Stout's and Sippell's fees to be paid from Beverly's revocable trust, MCL 700.1104(b) defines "estate" as "the property of the decedent, trust, or other person whose affairs are subject to this act as the property is originally constituted and as it exists throughout administration." If the estate property is insufficient to pay claims, "[c]osts and expenses of administration" have highest priority of payment. MCL 700.3805(1)(a). A professional guardian or professional conservator is precluded from "receiv[ing] as a result of that appointment a benefit beyond compensation specifically authorized for that type of fiduciary" by EPIC or the mental health code. MCL 700.5106(4).

MCL 700.7605 provides:

(1) The property of a trust over which the settlor has the right without regard to the settlor's mental capacity, at his or her death, either alone or in conjunction with another person, to revoke the trust and revest principal in himself or herself is subject to all of the following, but only to the extent that the settlor's property subject to probate administration is insufficient to satisfy the following expenses, claims, and allowances:

(a) The administration expenses of the settlor's estate.

(b) An enforceable and timely presented claim of a creditor of the settlor, including a claim for the settlor's funeral and burial expenses.

(c) Homestead, family, and exempt property allowances.

Sippell was both Beverly's guardian and the successor trustee of Beverly's revocable trust. The revocable trust assets were part of Beverly's estate. Therefore, the probate court did not err by directing that Sippell's fees could be paid from trust assets, for Sippell's services rendered for the guardianship and for the revocable trust. Appellant argues that the trust assets became payable to him and Steven immediately upon Beverly's death, and therefore never became part of her estate. However, Sippell incurred at least part of the attorney fees before her death. The probate court ordered payment from Beverly's estate before her death. Sippell's entitlement to trust funds for payment of attorney fees thus existed as a liability against Beverly's revocable trust before the beneficiaries became entitled to distribution. The record does not indicate that Stout had any involvement with administration of the revocable trust, but the prior order directing payment of his fees from Beverly's estate authorized payment from the revocable trust under MCL 700.1104(b) and MCL 700.5413. Accordingly, the probate court did not err by authorizing payment of Stout's and Sippell's fees from the revocable trust.

B. DOCKET NO. 358509

-14-

Appellant argues that Beverly's death and the closure of the guardianship deprived Sippell of standing to petition for fees and costs in the guardianship case, and deprived the probate court of jurisdiction to consider that petition. We disagree.

"Whether a party has standing is a question of law that is reviewed de novo." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). Whether the probate court had subject-matter jurisdiction after Beverly's death is also a question of law that we review de novo. *Bank v Mich Ed Ass'n–NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016).

Under MCL 600.605, "[c]ircuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." Pursuant to MCL 600.841(1)(a), a probate court has jurisdiction "conferred upon it under [EPIC]." And as mentioned above, EPIC provides a probate court with exclusive jurisdiction in regard to matters that relate to "[e]state administration, settlement, and distribution." MCL 700.1302(a)(*ii*).

Contrary to what appellant argues, without citation to supporting authority, Beverly's death did not deprive Sippell of standing to seek approval of his fees, and the probate court had continuing jurisdiction to review that matter. "Following a protected person's death, the conservator or guardian must settle his account." *In re Conservatorship of Halbeck*, 201 Mich App 387, 396; 506 NW2d 574 (1993) (quotation marks and citation omitted). In *Halbeck*, this Court recognized that in several jurisdictions, persons with claims against a ward's estate could bring those claims against the conservator after the ward's death. *Id*. at 395-396. This Court concluded that the probate court had jurisdiction over a claimant's petition for services performed for the ward before death. *Id*. at 396. Similarly in this case, after Beverly's death, it was still necessary for Sippell to settle his account of fiduciary, which included obtaining approval of payment of attorney fees, which the probate court had authorized before Beverly's death. Thus, Sippell had standing to seek approval of the attorney fees in settlement of his account, and the probate court had continuing jurisdiction to review that matter.

## III. BEVERLY HOWE REVOCABLE TRUST

### A. DOCKET NO. 358199

On June 2, 2020, the probate court removed appellant and Steven as cotrustees of Beverly's revocable trust and appointed Sippell as successor trustee. As noted earlier, in a prior appeal this Court vacated that order and remanded this case to the probate court. This Court stated:

[T]he probate court noted that it had previously held a hearing relating to a "physical altercation" that occurred between Thomas and Steven concerning the endorsement of a check. The probate court noted that Thomas and Steven were acting as cotrustees at the time of the altercation and that Beverly was injured as a result. While it appears that the probate court found that Thomas and Steven were unable to work together as cotrustees and that permitting them to serve as cotrustees would not be beneficial to Beverly, there is no record evidence to support these findings. Indeed, it is unclear when the hearing referenced by the probate court

occurred and if it occurred in relation to the proceeding concerning the Revocable Trust. Given that proceedings were pending concerning Beverly's guardianship and the Family Trusts, it is entirely possible that the hearing occurred in a different proceeding. It is notable that the probate court referenced findings that it made in relation to the proceedings concerning the Family Trusts in its July 23, 2020 opinion and order.

> Because there is no evidence in the record to support the probate court's finding that Thomas could not serve as trustee, the probate court clearly erred. See *Hill* [*v City of Warren*, 276 Mich App 299, 310; 740 NW2d 706 (2007)]. We therefore vacate the portion of the June 2, 2020 order that appointed Sippell as trustee and remand the matter to the probate court for further proceedings. On remand, the probate court shall explain and rationalize the basis for its ruling. Specifically, the probate court must explain what evidence the court relied on when it determined that it was inappropriate for Thomas to serve as trustee of the Revocable Trust and how those findings relate to MCL 700.7706(2) with respect to the Revocable Trust. [*In re Beverly M Howe Revocable Trust* (Docket No. 354458), unpub op at 8.]

On remand, the probate court stated that it was taking "judicial notice of all 'Howe files,' " and set forth, in 11 numbered paragraphs, the facts supporting removal of appellant and Steven as cotrustees. These are summarized as follows:

1) On September 5, 2018, the trust protector of the Wallace Howe Family Trust filed a Notice of Disinterest stating that there were "differences of opinion and outright hostility" between appellant and Steven.

2) A guardian ad litem report, dated September 8, 2018 recommended appointment of a neutral guardian because conflict and animosity between appellant and Steven prevented them from protecting Beverly.

3) On February 8, 2019, appellant was found in contempt in the guardianship file and the Wallace Howe Family Trust file.

4) Appellant was found in direct contempt on March 4, 2019, and sentenced to jail for failing to produce medical information, medications, financial documents, and personal property.

5) On April 26, 2019, appellant petitioned for payment of $263,120 for in-home care of Beverly. Steven objected to the petition.

6) The probate court suspended appellant's visitation with Beverly, but later allowed supervised visitation on June 3, 2019.

7) Appellant's supervised visitation was suspended on June 14, 2019, because of "new behaviors." He was sentenced to jail for contempt.

8) On June 27, 2019, the court ordered appellant to remove his name from Beverly's Prudential Annuity and Optum RX accounts.

-16-

9) In July 2018, Steven petitioned for supervision of the Wallace Howe Family Trust because appellant withdrew or mismanaged funds, causing a loss of $140,000. Beverly was injured in a physical altercation between appellant and Steven in June 2018.

10) On May 5, 2020, Rizik alleged that appellant viewed Wallace Howe Family Trust funds as his own.

11) On May 5, 2020, appellant filed an affidavit alleging that Steven took Beverly to "secret meetings," "sabotaged" two trusts, and caused investment losses.

The court concluded that these facts justified appellant's and Steven's removal as cotrustees and Sippell's appointment as successor trustee. Accordingly, on August 4, 2021, the court reappointed Sippell as successor trustee, *nunc pro tunc*.

Initially, appellant argues that the probate court failed to comply with this Court's remand instructions in the prior appeal. We disagree. "The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544; 705 NW2d 365 (2005) (quotation marks and citation omitted). "When an appellate court remands a case without instructions, a lower court has the same power as if it made the ruling itself." *Id.* (quotation marks and citation omitted). "However, when an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order." *Id.*

In the prior appeal, this Court instructed the probate court to

explain and rationalize the basis for its ruling. Specifically, the probate court must explain what evidence the court relied on when it determined that it was inappropriate for Thomas to serve as trustee of the Revocable Trust and how those findings relate to MCL 700.7706(2) with respect to the Revocable Trust. [*In re Beverly M Howe Revocable Trust* (Docket No. 354458), unpub op at 8.]

MCL 700.7706(2) provides:

The court may remove a trustee if 1 or more of the following occur:

(a) The trustee commits a serious breach of trust.

(b) Lack of cooperation among cotrustees substantially impairs the administration of the trust.

(c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the purposes of the trust.

(d) There has been a substantial change of circumstances, the court finds that removal of the trustee best serves the interests of the trust beneficiaries and is

not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

We disagree with appellant's argument that the probate court deviated from this Court's remand instructions by considering appellant's conduct in the guardianship and other trust cases. This Court did not instruct the probate court to restrict its consideration to events that occurred only within the revocable trust file. This Court instructed the probate court to specify the evidence on which it relied to conclude that appellant's and Steven's lack of cooperation impaired administration of the revocable trust. It was appropriate to consider any evidence relevant to this issue, whether it involved events in appellant's and Steven's personal lives or other legal proceedings in which they were both involved. Consistent with this Court's remand instructions, the probate court's 11 paragraphs explicitly stated the evidence supporting its decision.

Appellant also argues that his conduct in the other cases was irrelevant because MCL 700.7706(2)(b) provides grounds for removal where "[l]ack of cooperation among cotrustees substantially impairs the administration of *the* trust." (Emphasis added). "Relevant evidence is evidence 'having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 333 Mich App 457, 499-500; 960 NW2d 186 (2020), quoting MRE 401. Generally, relevant evidence is admissible, and evidence that is not relevant is not admissible. MRE 402. Evidence of appellant's pervasive pattern of disobeying court orders, his physical and verbal altercations with Steven, and his diversion of funds without Steven's knowledge were relevant to his ability to cooperate with Steven in administering the revocable trust. Such conduct was also relevant to his fitness to manage the trust under MCL 700.7706(2)(c), and whether there had been a substantial change of circumstances since his appointment as cotrustee under MCL 700.7706(2)(d). Accordingly, the probate court did not violate this Court's remand instructions.

Appellant alternatively argues that there was no need to reappoint a trustee because Beverly's intervening death rendered appointment of a trustee moot. He argues that instead of adjourning his petition for distribution of trust assets, the probate court should have ordered immediate distribution to appellant and Steven. However, we agree with Sippell that the probate court was not at liberty to disregard this Court's remand instructions to appoint a trustee and immediately distribute assets without a trustee. "In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor." *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008). "The intent of the settlor is to be carried out as nearly as possible." *Id*. "The powers and duties of the trustees, and the settlor's intent regarding the purpose of the trust's creation and its operation, are determined by examining the trust instrument." *Id*. "This Court must attempt to construe the instrument so that each word has meaning." *Id*. Responsibility for administering the trust falls to a trustee. See MCL 700.7701. Therefore, the probate court was required to appoint a trustee to fill the vacancy created when this Court vacated the probate court's prior order appointing Sippell as successor trustee. Consequently, the probate court did not abuse its discretion by delaying the hearing on appellant's petition for distribution until August 27, after it first revisited its prior order appointing Sippell as successor trustee, in compliance with this Court's remand instructions.

Appellant also argues that the probate court erred when it reappointed Sippell as successor trustee *nunc pro tunc*. We disagree. The purpose of a *nunc pro tunc* order "is to supply an omission in the record of action previously taken by the court but not properly recorded." *Riemer v Johnson*, 311 Mich App 632, 655-656; 876 NW2d 279 (2015) (quotation marks and citation omitted). "An entry *nunc pro tunc* is proper to supply an omission in the record of action really had, but omitted through inadvertence or mistake." *Neville v Neville*, 295 Mich App 460, 467 n 1; 812 NW2d 816 (2012) (quotation marks and citation omitted). "Its purpose is not to supply omitted action of a trial court." *Id*. In *In re Beverly M Howe Revocable Trust* (Docket No. 354458), this Court vacated the probate court's original appointment of Sippell as successor trustee, thus causing an "omission" in the record of an appointed trustee. The probate court's order on remand corrected this deficiency created by this Court's partial vacation of the prior order.

Moreover, contrary to what appellant suggests on appeal, the probate court's *nunc pro tunc* application of its reappointment did not contradict this Court's determination that the probate court failed to cite record evidence supporting its original appointment of Sippell as successor trustee. Under the law-of-the-case doctrine, "a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 132; 762 NW2d 178 (2009) (quotation marks and citation omitted). "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Id*. (quotation marks and citation omitted).

This Court did not previously hold that evidence supporting the probate court's original appointment did not exist. It held only that the probate court failed to specify the evidence on which it relied, and referred to evidence that was not a matter of record. On remand, the probate court took judicial notice of the guardianship and family trust case records, which were not part of the record in the prior appeal. The probate court's taking of judicial notice, and its explanation of the basis for its ruling, which was lacking at the time of the original appointment, corrected the previous deficiencies without contradicting this Court's holding or deviating from this Court's instructions. Accordingly, the probate court's *nunc pro tunc* application of its reappointment order did not violate the law-of-the-case doctrine.

Appellant also argues that after this Court's decision on May 27, 2021, vacating the prior order appointing Sippell as trustee, Sippell lacked standing to file any petitions in the revocable trust matter before his reappointment on August 4, 2021. We again disagree.

"The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). "Thus, the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Id*. (quotation marks and citation omitted). "[S]tanding refers to the right of a party plaintiff *initially* to invoke the power of the court to adjudicate a claimed injury in fact. . . ." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290; 715 NW2d 846 (2006).

The EPIC defines "Interested person" as:

the incumbent fiduciary; an heir, devisee, child, spouse, creditor, and beneficiary and any other person that has a property right in or claim against a trust estate or the estate of a decedent, ward, or protected individual; a person that has priority for appointment as personal representative; and a fiduciary representing an interested person. Identification of interested persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, a proceeding, and by the supreme court rules. [MCL 700.1105(c).]

MCL 700.1104(e) states that a " '[f]iduciary' includes, but is not limited to, a personal representative, funeral representative, guardian, conservator, trustee, plenary guardian, partial guardian, and successor fiduciary." MCR 5.125 defines "interested persons" in probate proceedings. MCR 5.125(B)(3) provides, "If either a trust or a trustee is a devisee, the trustee is the interested person. If no trustee has qualified, the interested persons are the qualified trust beneficiaries described in MCL 700.7103(g)(*i*) and the nominated trustee, if any." MCR 5.125(C)(33) provides a list of additional interested parties "in a proceeding affecting a trust other than those already covered," including "(c) the current trustee" and "(d) in a proceeding to appoint a trustee, the proposed trustee." MCR 5.125 further provides:

> (D) The court shall make a specific determination of the interested persons if they are not defined by statute or court rule.

> (E) In the interest of justice, the court may require additional persons be served.

Sippell was a fiduciary because he was previously appointed trustee. This Court's judgment did not declare him ineligible or unsuitable to serve as trustee, but only determined that the probate court failed to state the evidence it relied on in determining that it was inappropriate for appellant to serve as trustee, and failed to explain and rationalize the basis for its decision to appoint Sippell as successor trustee. To the extent that Sippell was no longer an active trustee after this Court vacated the probate court's original appointment order, because this Court did not hold that Sippell was ineligible or unqualified to serve as trustee and remanded for the purpose of requiring the probate court to explain and rationalize the basis for its prior decision, Sippell would qualify as a nominated trustee under MCL 700.7103(g)(*i*), or a proposed trustee under MCR 5.125(C)(33)(d). Moreover, the probate court's issuance of the order *nunc pro tunc* made him trustee retroactively to the date of this Court's order partially vacating the probate court's original appointment order. Therefore, he had standing to bring petitions during the interim period before his reappointment.

We also reject appellant's argument that the probate court was not permitted to take judicial notice of the other trust files and the guardianship file in considering his appropriateness to serve as trustee. Although appellant argues that it was improper for the probate court to take judicial notice of the records in the other files because he disputed some of the matters at issue in those files, the existence of the other records was not in dispute. Moreover, it is well-established that a probate court may take judicial notice of its own files. See *In re Marxhausen's Estate*, 247 Mich 192, 199; 225 NW 632 (1929); *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). We also reject appellant's argument that matters at issue in the other proceedings were not relevant to the revocable trust. As explained earlier, evidence of appellant's pervasive pattern of disobeying

court orders, his physical and verbal altercations with Steven, and his diversion of funds without Steven's knowledge were relevant to his ability to cooperate with Steven in administering the revocable trust. MRE 401. Such conduct also was relevant to his fitness for managing the trust under MCL 700.7706(2)(c), and whether there had been a substantial change of circumstances since his appointment as cotrustee under MCL 700.7706(2)(d).

For all of the foregoing reasons, we reject appellant's claims of error in Docket No. 358199.

## B. DOCKET NO. 358512

Appellant argues that Sippell lacked standing to bring petitions during the interim period between May 27, 2021, which this Court vacated the probate court's original appointment order in the prior appeal, and August 4, 2021, when the probate court reappointed him as successor trustee. However, we have already addressed and rejected this argument in Docket No. 358199. As explained earlier, Sippell had standing as a nominated trustee under MCL 700.7103(g)(*i*), or a proposed trustee under MCR 5.125(C)(33)(d), to participate in the proceedings on remand. And in any event, the probate court's reappointment of Sippell as trustee *nunc pro tunc* resolved any doubt over his standing to petition the court for approval of attorney fees.

Appellant also complains that Sippell's petition for attorney fees in relation to the revocable trust included charges for services that did not benefit the trust. "[I]f a trustee participates in a civil action or proceeding in good faith, whether successful or not, the trustee is entitled to receive from trust property all expenses and disbursements including reasonable attorney fees . . . ." MCL 700.7904(2). A trustee is authorized "[t]o employ an attorney to perform necessary legal services or to advise or assist the trustee in the performance of the trustee's administrative duties, even if the attorney is associated with the trustee, and to act without independent investigation upon the attorney's recommendation." MCL 700.7817(w). "An attorney employed under this subdivision shall receive reasonable compensation for his or her employment." *Id.*

The probate court found that the fees stated in Sippell's petition were reasonable. Although appellant argues that several items on the fee statements did not involve services that were beneficial to the trust, the standard under MCL 700.7904(2) authorizes attorney fees for the trustee's good-faith participation in legal proceedings. Accordingly, we reject this claim of error.

## IV. CONCLUSION

In sum, in Docket No. 355909, we affirm the order allowing Rizik's second account in the family trust. In Docket No. 357016, we remand to the probate court for further proceedings relating to Rizik's attorney-fee petition and the final account for the family trust. In Docket No. 357023, we affirm the probate court's orders finding appellant in contempt and affirm the order approving Sippell's first account, but vacate the orders approving the second and final guardianship accounts and remand for further proceedings. We affirm in Docket No. 357658. In Docket No. 358199, we affirm the probate court's order reinstating Sippell as successor trustee of the revocable trust *nunc pro tunc*. In Docket Nos. 358509 and 358512, we affirm the orders

-21-

granting Sippell's petition for attorney fees and costs in the guardianship and revocable trust cases. We reject appellant's remaining claims of error in all appeals.[2]

Affirmed in part, vacated in part, and remanded to the probate court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica

---

[2] Our opinion addresses all claims of error raised by appellant, including the identical claims raised in multiple docket numbers.